**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| JOAN GIDDENS, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.: 7:25-CV-163 (WLS) |
| | : | |
| TIFT REGIONAL HEALTH SYSTEM, | : | |
| INC. d/b/a TIFT REGIONAL | : | |
| MEDICAL CENTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Plaintiffs' Motion to Remand (Doc. 7), filed on December 11, 2025. Therein, Plaintiffs move to remand this action to the Superior Court of Tift County, Georgia, on the basis that Defendant Smith and Nephew, Inc.'s Notice of Removal (Doc. 1) is improper. For the reasons discussed below, Plaintiffs' Motion (Doc. 7) is **DENIED**.

## I.    BACKGROUND

On October 8, 2025, Plaintiffs Joan and Marvin Giddens filed their initial lawsuit against Defendants Tift Regional Health System, Inc. ("Tift Regional"), Dr. James Scott ("Dr. Scott"), and Smith and Nephew, Inc. ("Smith and Nephew") in the Superior Court of Tift County, Georgia. (Doc. 1-1). Plaintiffs allege that Smith and Nephew, a global medical technology company, sold a hip resurfacing system which was implanted into Plaintiff Joan Giddens by Dr. Scott at Tift Regional on April 1, 2008. (Doc. 1-1 ¶¶ 5–7, 9); (Doc. 7-1 ¶ 2). The hip system eventually deteriorated and was removed from Plaintiff Joan's body during a second surgery at a different hospital on October 18, 2023. (Doc. 1-1 ¶ 13); (Doc. 7-1 ¶ 2).

Plaintiffs assert claims against Smith and Nephew for negligent design and manufacture causing illness and injury (Count 1) and negligent design and manufacture demonstrating willful, reckless and wanton conduct (Count 2). (Doc. 1-1 ¶¶ 12–25). Plaintiffs assert additional claims against all Defendants for negligent failure to warn (Count 3), fraudulent concealment and fraud (Count 4), and loss of consortium (Count 5), as well as claims for additional and

1

punitive damages (Count 6) and attorneys' fees (Count 7). (*Id.* ¶¶ 26–49). Plaintiffs are residents of Atkinson County, Georgia. (*Id.* ¶ 1). Smith and Nephew is a Delaware corporation with its principal place of business in Tennessee. (Doc. 1 ¶ 11). Tift Regional is a Georgia hospital with its principal office in Tifton, Georgia, and Dr. Scott is a resident of Tift County, Georgia. (*Id.* ¶ 13); (Doc. 1-1 ¶¶ 2–3).

On November 11, 2025, Smith and Nephew removed the case to this Court, pursuant to the Court's jurisdiction under 28 U.S.C. § 1332. (Doc. 1). Tift Regional and Dr. Scott did not consent to the initial removal. (*Id.* ¶ 8). Rather, Tift Regional filed an Answer (Doc. 3) to Plaintiffs' complaint on December 17, 2025. Dr. Scott filed a Motion to Dismiss (Doc. 14) and attached a notice of consent to removal (Doc. 14-2) on January 29, 2026, as well as an Answer (Doc. 15) on February 2, 2026.

Plaintiffs filed the instant Motion to Remand (Doc. 7) on December 11, 2025. Smith and Nephew filed a Response (Doc. 9) on January 2, 2026. Plaintiffs did not file a reply to Smith and Nephew's response, and the deadline to do so has expired. As such, the Motion is ripe for review.

## II.    LAW AND ANALYSIS

Federal courts are courts of limited jurisdiction, and as such, they may only hear cases that the Constitution and Congress have authorized them to hear. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An action originally brought in state court may be removed by a defendant to federal court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441. Because of the limited authority of federal courts, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). "[I]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001); *see City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("The removing party bears the burden of proof regarding the existence of federal subject matter jurisdiction."). "And, in the context of a motion for remand, the party opposing remand has the burden to establish that removal was

proper." *Brown v. Ford Motor Co.*, No. 7:21-CV-00175, 2021 WL 2533020, at *2 (N.D. Ala. June 21, 2021) (citing *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 n.4 (11th Cir. 1998)).

Smith and Nephew removed the case on the basis of the Court's jurisdiction under 28 U.S.C. § 1332, which requires that the Parties are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). As the removing party, Smith and Nephew bears the burden of establishing that these requirements are satisfied. Smith and Nephew make two arguments in support of jurisdiction. First, that there is complete diversity of citizenship between Plaintiffs and Smith and Nephew, and the Court should disregard the citizenship of Tift Regional and Dr. Scott because they are fraudulently joined in this action. (Doc. 1 at 5). Second, even though Plaintiffs' complaint does not specify an amount of damages, it is "facially apparent" from the complaint that the amount in controversy exceeds the sum or value of $75,000. (*Id.* ¶¶ 38–41). The Court addresses each argument in turn.

### A.    Fraudulent Joinder

When a removing party alleges fraudulent joinder, that party has the burden of proving that either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)). The removing defendant "must make such a showing by clear and convincing evidence." *Henderson v. Washington Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). This burden is "a heavy one," such that if the "plaintiff states even a colorable claim against the resident defendant, joinder is proper and the case should be remanded to state court." *Crowe*, 113 F.3d at 1538. However, where fraudulent joinder is established, "the district court must ignore the presence of the non-diverse defendant and deny any motion to remand[.]" *Henderson*, 454 F.3d at 1281.

The Eleventh Circuit has made clear that "the jurisdictional inquiry must not subsume substantive determination[,]" and courts "are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Crowe*, 113 F.3d at 1538 (citations omitted). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.*,

709 F.2d 1433, 1440–41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

In determining whether a case should be remanded, courts "must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe*, 113 F.3d at 1538 (citation omitted). "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "[T]here must be some question of fact before the district court can resolve that fact in the plaintiff's favor." *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (stating that a district court cannot resolve a fact in the plaintiff's favor when the defendants produced sworn statements that were not rebutted by the plaintiff); *see Askew v. DC Med., LLC*, No. 1:11-CV-1245, 2011 WL 1811433, at *3 (N.D. Ga. May 12, 2011) ("[T]he court need not accept all of the plaintiff's claims as true in the face of unanswered affidavits squarely contradicting the plaintiff's factual assertions.").

### i.    *Negligent Failure to Warn*

Under Georgia law, to state a cause of action for negligent failure to warn, "a plaintiff must allege facts sufficient to show that (1) the [defendant] knew or reasonably should have known of a danger arising from use of the product and therefore had a duty to warn; (2) the [defendant] breached the duty; and (3) the breach was the proximate cause of the plaintiff's injury." *Parris v. 3M Co.*, 595 F. Supp. 3d 1288, 1336 (N.D. Ga. 2022). The seller of product who has actual or constructive knowledge of a danger has a duty to warn of the danger at the time of sale. *Bean v. Omark Indus., Inc.*, 237 S.E.2d 607, 610 (Ga. Ct. App. 1997); *see Askew*, 2011 WL 1811433, at *3 (quoting *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. Ct. App. 1994) (A "seller [of a product] is required to give warning 'if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge' of the danger.")). Similarly, a distributor is liable "for negligent failure to warn only if, at the time of the sale, it had actual or constructive knowledge that its product created a danger for the consumer." *Bishop v. Farhat*, 489 S.E.2d 323, 328 (Ga. Ct. App. 1997).

4

Plaintiffs allege that Smith and Nephew marketed and sold the hip resurfacing system through Dr. Scott and Tift Regional, who in turn sold the system to Plaintiff Joan. (Doc. 1-1 ¶ 7). Plaintiffs further allege "all of the Defendants were under a duty to warn Plaintiff Joan of the dangers posed by the negligent design and manufacture of the hip system she was sold, yet they utterly failed to do so." (*Id.* ¶ 27). But Dr. Scott and Tift Regional, as sellers or distributors, would only have a duty to warn if either had actual or constructive knowledge of the alleged defects in the design and manufacture of the hip system. The complaint does not contain any allegation of Dr. Scott or Tift Regional having such knowledge prior to Plaintiff Joan's surgery in 2008.[1] And Plaintiffs plead no facts whatsoever from which the Court could infer Dr. Scott or Tift Regional's actual or constructive knowledge, for instance, what information was available to Dr. Scott and Tift Regional about the alleged defects in the hip system. In fact, elsewhere in the complaint, Plaintiffs allege that Smith and Nephew was "under a duty to disclose to . . . the medical community the defective nature of the [hip system,]" but "instead fraudulently concealed the danger of the such [sic] devices[.]" (*Id.* ¶ 34). The inference from these allegations is that neither Dr. Scott nor Tift Regional knew of any alleged defects because that information was concealed from them by Smith and Nephew. Even viewing the facts and allegations in the light most favorable to Plaintiffs, the complaint suggests that neither Dr. Scott nor Tift Regional had any knowledge of the hip system's alleged defects.

Even if Plaintiffs' complaint contained an allegation as to Dr. Scott or Tift Regional's actual or constructive knowledge, Smith and Nephew submitted a sworn affidavit from Christopher Dorman, the President and CEO of Tift Regional, who testified that prior to 2008, or any time thereafter, Tift Regional had no knowledge of any design or manufacturing defect in the Smith and Nephew hip system that was implanted during Plaintiff Joan's surgery that year. (Doc. 1-2 ¶ 5). Nor did Tift Regional have any knowledge of any 2007 recalls applicable to the hip system Plaintiff received in 2008. (*Id.* ¶ 6). Dorman's testimony squarely contradicts Plaintiffs' assertions, and Plaintiffs have not produced any evidence to raise an

---

[1] The only allegation as to actual or constructive knowledge is that "Defendant Smith & Nephew knew or should have known about the defects of its product sold to Plaintiff Joan[,]" which is not relevant for Plaintiffs' claim against Dr. Scott and Tift Regional. (Doc. 1-1 ¶ 10).

inference that Dr. Scott or Tift Regional had actual or constructive knowledge of any alleged defects in the hip system prior to its use. Plaintiffs' merely conclusory allegations cannot survive Smith and Nephew's submission of testimonial evidence to the contrary. While the burden on Smith and Nephew to show fraudulent joinder is a heavy one, *see Crowe*, 113 F.3d at 1538, Plaintiffs must point to some evidence that supports their claim now that the allegation in the complaint has been controverted by the Dorman affidavit. *Askew*, 2011 WL 1811433 at *6; *see also Legg*, 428 F.3d at 1322 (holding that the district court abused its discretion where it refused to consider defendants' affidavits contradicting plaintiffs' claims as to the merits of the case and relied solely on the allegations in plaintiffs' complaint).

Because Plaintiffs fail to dispute Smith and Nephew's assertions in the affidavit with any evidence supporting their allegation that Dr. Scott or Tift Regional had a duty to warn based on actual or constructive knowledge, the Court concludes that Plaintiffs do not state even an arguable claim under Georgia law for negligent failure to warn against Dr. Scott and Tift Regional.

ii.      *Fraudulent Concealment and Fraud*

Under Georgia law, "[t]he tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *Meyer v. Waite*, 606 S.E.2d 16, 20 (Ga. Ct. App. 2004). "In a claim for fraudulent concealment, a plaintiff must prove the same five elements of a fraud claim." *Coleman v. H2S Holdings, LLC*, 230 F. Supp. 3d 1313, 1321 (N.D. Ga. 2017), *aff'd sub nom. Coleman v. Oasis Outsourcing, Inc.*, 779 F. App'x 649 (11th Cir. 2019) (citing *Hanlon v. Thornton*, 462 S.E.2d 154, 157 (Ga. Ct. App. 1995)). "In all cases of fraud involving a concealment of a material fact, scienter, or knowledge of the alleged falsehood, is an essential element of the tort." *ReMax N. Atlanta v. Clark*, 537 S.E.2d 138, 142 (Ga. Ct. App. 2000) (citing O.C.G.A. § 51-6-2(b)). Indeed, in fraudulent concealment actions, "the allegedly defrauded party must prove that the alleged defrauder had *actual, not merely constructive, knowledge* of the fact concealed." *Webb v. Rushing*, 391 S.E.2d 709, 711 (Ga. Ct. App. 1990) (emphasis added).

For the same reasons Plaintiffs fail to state a failure to warn claim, Plaintiffs also fail to state a claim for fraudulent concealment or fraud against Dr. Scott and Tift Regional. Plaintiffs

6

do not allege that Dr. Scott or Tift Regional actually knew of the hip system's alleged defects prior to the 2008 surgery, nor do they allege any facts from which the Court could infer such knowledge. Count 4 of Plaintiffs' complaint alleges the following:

34.

Defendant Smith & Nephew was under a duty to disclose to Plaintiffs and the medical community the defective nature of the resurfacing products because it was in a superior position to know the quality, safety, and efficacy of the such [sic] products. Defendant instead fraudulently concealed the danger of the such [sic] devices by underreporting adverse events for system in question, delaying reporting of adverse events, and categorizing them in a way that hid the danger of this product.

35.

The facts that were concealed or withheld from Plaintiffs were material facts that a reasonable person would have considered important in deciding whether to utilize the resurfacing product, and Defendants withheld such information to influence Plaintiff Joan into purchasing the system in question.

(Doc. 1-1 ¶¶ 34–35). Again, the inference from these allegations is that Smith and Nephew concealed the allegedly defective nature of the hip system from Dr. Scott and Tift Regional, such that neither party had actual knowledge of the alleged defects prior to Plaintiff Joan's surgery. And the Dorman affidavit provides additional evidence that Tift Regional had no knowledge, either actual or constructive, of problems with the hip system. (*See* Doc. 1-2). Without actual knowledge, which is essential to a fraudulent concealment claim, Dr. Scott or Tift Regional could not have fraudulently concealed or otherwise withheld material information from Plaintiffs.

As discussed above, Plaintiffs do not provide any evidence to dispute the Dorman affidavit. Instead, in their Motion to Remand, Plaintiffs argue that Tift Regional "acted in concert" with Smith and Nephew to avoid liability because the hip system has since "disappeared" after its removal from Plaintiff Joan's body in October of 2023. (Doc. 7 ¶ 19). Plaintiffs contend the collusion between Tift Regional and Smith and Nephew is supported by the fact that even though the Dorman affidavit states that Tift Regional was not aware of the alleged defects after 2008, according to Plaintiff Joan's affidavit (Doc. 7-1), a Tift Regional representative was in the operating room during Plaintiff Joan's second surgery in October 2023. (Doc. 7 ¶ 20). Plaintiffs' collusion argument fails for two reasons. First, Plaintiff Joan's affidavit says nothing about Tift Regional representatives, but asserts instead that a Smith and

Nephew representative was present in the operating room in 2023. (Doc. 7-1 ¶ 3) ("A Smith & Nephew representative was present in the operating room to assist in the choice of what hardware was to be used as the replacement from the hip that was implanted on April 1, 2008."). Second, even if someone from Tift Regional had been present during the second surgery in 2023, any newfound knowledge of the hip system's defectiveness would still not support an allegation that Tift Regional had knowledge prior to or at the time of the original surgery in 2008. Put another way, Tift Regional must have had actual knowledge of the hip system's defectiveness in 2008 in order to withhold or otherwise conceal that information from Plaintiffs. Thus, it matters not whether or when Tift Regional eventually discovered the alleged defects in 2023 so long as it had no knowledge of the defectiveness in 2008. *See Webb*, 391 S.E.2d at 711 ("There must be some evidence of the silent party's actual knowledge that the defect exists *at the time of the sale*[.]") (emphasis added).

Because Plaintiffs do not allege that Dr. Scott or Tift Regional had actual knowledge of the defects in the hip system and fail to dispute Smith and Nephew's assertions in the affidavit with any evidence of such knowledge, the Court concludes that Plaintiffs do not state even an arguable claim under Georgia law for fraudulent concealment or fraud against Dr. Scott and Tift Regional.

In sum, the Court finds that Smith and Nephew has met its burden of proving fraudulent joinder because proper claims have not been asserted against Dr. Scott or Tift Regional. The Court, therefore, finds that their respective residences may be ignored and that complete diversity exists between the Parties. The Court must now determine whether the second requirement of diversity jurisdiction, the amount in controversy requirement, is satisfied.

### B.    Amount in Controversy

The sole remaining issue is whether the amount in controversy exceeds $75,000, the threshold for federal diversity jurisdiction. *See* 28 U.S.C. § 1332(a). The Court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010). The removing party "bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007); *see Williams v.*

*Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("Where, as here, the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement."). In assessing whether the defendant has met its burden, "neither the defendants nor the court may speculate," *Lowery*, 483 F.3d at 1215. The Court may, however, "consider facts alleged in the notice of removal, judicial admissions made by the plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied." *Pretka*, 608 F.3d at 754 (citation omitted). "The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation . . . ." *Id.* at 755; *see Fowler v. Safeco Ins. Co. of Am.*, 915 F.2d 616, 617 (11th Cir. 1990) ("Defendants have the opportunity to submit affidavits, depositions, or other evidence to support removal.").

"'When the complaint does not claim a specific amount of damages, removal from state court is [jurisdictionally] proper if it is facially apparent from the complaint that the amount in controversy exceeds the jurisdictional requirement.'" *Id.* at 754 (quoting *Williams*, 269 F.3d at 1319). However, "[i]f the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." *Id.* (quoting *Williams*, 269 F.3d at 1319) (quotation marks omitted).

Smith and Nephew contend that it is facially apparent from the complaint that the amount in controversy exceeds $75,000. (Doc. 1 ¶ 39). Smith and Nephew points to the complaint's allegation that Plaintiff Joan "suffered 'severe illness and injury' when her Smith [and] Nephew hip implants 'deteriorated' fifteen years after they were implanted." (*Id.* ¶ 40 (quoting Doc. 1-1 ¶¶ 9, 13, 14, 22, 28)). And the allegation that Plaintiff Joan seeks damages for "'pain and suffering, medical expenses, and other damages.'" (*Id.* (quoting Doc. 1-1 ¶¶ 17, 24, 30). Smith and Nephew also cites Plaintiffs' claim for punitive damages as well as Plaintiff Marvin Giddens' claim for loss of consortium. (*Id.*)

In addition, Smith and Nephew submits the affidavit of its attorney, Terri Reiskin, who testified that on October 29, 2025, she received Plaintiff Joan's medical records from Plaintiffs'

9

counsel along with a document titled "Medical Providers Index." (Doc. 9-1 ¶¶ 5–6). This document, which is attached to the affidavit as an exhibit, is a partial listing of Plaintiff Joan's medical providers and corresponding medical expenses incurred with a "Total to Date" of $84,111.42. (Doc. 9-1 at 6).

Setting aside the complaint's allegations, the Medical Providers Index, presumably prepared by Plaintiffs' counsel and provided to the attorneys for Smith and Nephew, establishes a likely amount in controversy that exceeds the statutory requirement. Indeed, Plaintiff Joan claims to have suffered significant injuries, injuries severe enough for her to have amassed over $80,000 in medical bills with additional bills yet to be tallied, according to this document. *See Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1381 (M.D. Fla. 2009) ("Unless the Court were to 'suspend reality,' it is hard to imagine that [plaintiff] would not, at the very least, seek to recover her past medical expenses in an action alleging that a defective product caused her injuries."). Like in *Devore*, the Court cannot conceive that Plaintiffs would not seek to recover at least the medical expenses Plaintiff Joan has already incurred from what she alleges was a defective hip system.

Plaintiffs contend that the Court does not have jurisdiction because Plaintiffs have not pled a specific amount of damages, and Smith and Nephew has not established that the amount-in-controversy exceeds $75,000. (Doc. 7 ¶ 14). Plaintiffs argue that the Court "should not acquiesce to [Smith and Nephew's] request that it speculate as to the amount of [their] claims[.]" (*Id.* ¶ 15). The Court agrees that such speculation is improper. *See Lowery*, 483 F.3d at 1215 ("[T]he existence of jurisdiction should not be divined by looking to the stars."). The Court may, however, use "reasonable deductions, reasonable inferences, or other reasonable extrapolations. That kind of reasoning is not akin to conjecture, speculation, or star gazing." *Pretka*, 608 F.3d at 754. "An inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist." *Id.* Smith and Nephew has provided evidence from which the Court may make a reasonable inference of the value of Plaintiffs' claims, without engaging in any impermissible speculation.

Accordingly, the Court finds that Smith and Nephew has presented evidence satisfying the amount in controversy requirement by a preponderance of the evidence. *Compare Exum v.*

*State Farm Fire & Cas. Co.*, 821 F. Supp. 2d 1285, 1294–95 (M.D. Ala. 2011) (finding that defendants presented sufficient evidence that the amount in controversy exceeded $75,000 where defendants presented plaintiff's deposition testimony stating he lost between $150,000 to $200,000 as a result of defendant's failure to pay his insurance claim) *and Bramlett v. YRC, Inc.*, No. 1:16-CV-3870, 2016 WL 9330340, at *2 (N.D. Ga. Dec. 7, 2016) (finding that defendants "clearly provided the Court with sufficient evidence . . . that the amount in controversy exceeds $75,000" based on plaintiff's $27,348.57 in medical expenses and $60,000 request for damages for lost wages) *with Osborne v. Cintas*, No. 2:19-CV-626, 2020 WL 3106520, at *2–3 (M.D. Ala. June 11, 2020) (finding that defendant failed to show by a preponderance that amount in controversy exceeded $75,000 where defendant merely restated complaint's allegations and pointed to similar cases with similar pleadings without providing any external evidence of the amount likely to be in controversy). Further, the Medical Providers Index was provided to Smith and Nephew on October 23, 2025,[2] before the Notice of Removal was filed on November 11, 2025. Thus, the Court finds that, at the time of removal, the amount in controversy exceeded $75,000. *See Pretka*, 608 F.3d at 751 ("A court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later.").

## **CONCLUSION**

In sum, the Court finds that it has federal jurisdiction based on diversity of the Parties' citizenship and an amount in controversy exceeding $75,000, pursuant to 28 U.S.C. § 1332(a). Accordingly, Plaintiffs' Motion to Remand (Doc. 7) is **DENIED**.

Further, having found fraudulent joinder, Defendants James Scott and Tift Regional Health System, Inc. are **DISMISSED**, without prejudice, from this action.[3] Defendant Scott's

---

[2] Attorney Reiskin testified that she personally received the documents, including the Medical Providers Index, on October 29, 2025. (Doc. 9-1 ¶ 5). But the documents were first provided by Plaintiffs' counsel to Smith and Nephew's national counsel on October 23, 2025. (*Id.* ¶ 7).

[3] Dismissal of the claims against Defendants James Scott and Tift Regional Health System, Inc. is appropriate because the Court has found that they were fraudulently joined in this action. *See Nix v. Wal-Mart Stores E., LP*, No. 1:06-CV-03052, 2007 WL 9703188, at *3 (N.D. Ga. Apr. 4, 2007) (dismissing claims against a defendant found to have been fraudulently joined); *Graham v. Bank of Am. N.A.*, No. 1:24-CV-00139, 2024 WL 4251904, at *8 (N.D. Ga. Aug. 16, 2024) (same); *Fowler v. Wyeth*, No. 3:04-CV-83, 2004 WL 3704897, at *4 (N.D. Fla. May 14, 2004) (same); *TKI, Inc. v. Nichols Research Corp.*, 191 F. Supp. 2d 1307, 1316 (M.D. Ala. 2002) (same); *see also Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) ("Even if a named defendant is [ ] a citizen [of the state where the cause of action is brought], however, it is appropriate for a federal court to

Motion to Dismiss (Doc. 14) is therefore **DENIED**, as moot. The Clerk of Court is therefore **DIRECTED** to terminate Defendants James Scott and Tift Regional Health System, Inc. from this action.

       **SO ORDERED**, this 27th day of February 2026.

                         **/s/ W. Louis Sands**
                         **W. LOUIS SANDS, SR. JUDGE**
                         **UNITED STATES DISTRICT COURT**

---

dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant."); Fed. R. Civ. P. 21 (stating that in the case of party misjoinder, "[p]arties may be dropped . . . by order of the court . . . of its own initiative at any stage of the action and on such terms that are just."); *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with the authority to allow a dispensable nondiverse party to be dropped at any time.").